2008 OK CIV APP 33

Angela **FREEMAN**, individually, and Angela Freeman, guardian and next friend of the minor children, Taryn Freeman and Aimee Freeman, Plaintiffs/Appellants,

v.

**SEARS, ROEBUCK AND CO.,**
a New York corporation,
Defendant/Appellee,

Mark Fenton, and John Doe, d/b/a Pro–Tech Heat and Air, Defendants.

No. 104,723.

Court of Civil Appeals of Oklahoma,
Division No. 1.

Feb. 22, 2008.

James A. Ikard, Oklahoma City, OK, for Appellants.

James W. Dobbs, Smith, Rhodes, Stewart & Elder, P.L.L.C., Oklahoma City, OK, for Appellee.

LARRY JOPLIN, Judge.

¶1 Plaintiffs/Appellants Angela Freeman, individually, and Angela Freeman, guardian and next friend of the minor children, Taryn Freeman and Aimee Freeman (Plaintiff), seek review of the trial court's orders granting the motion for summary judgment of Defendant/Appellee Sears, Roebuck and Co., a New York corporation (Sears), denying her motion for partial summary judgment, and denying her motion to reconsider on Plaintiff's claims for breach of contract. In this accelerated review proceeding, Plaintiff asserts the trial court erred as a matter of both fact and law in holding the claims were barred by *res judicata*.

¶2 According to her affidavit, Plaintiff requested an evaluation of her home for the installation of a central heat and air conditioning system by Sears. After an inspection on or about August 24, 1995, a Sears representative submitted a proposal for Plaintiff's purchase and financing of appropriate equipment from Sears, and installation of the equipment in the attic of her home by a contractor selected by Sears.

¶3 On September 6, 1995, Plaintiff accepted the proposal, and executed a Purchase Agreement. The Purchase Agreement assured, "Satisfaction Guaranteed or Your Money Back" on the front page, and contained a "Sears Installation Warranty," providing that, "should the workmanship of any Sears arranged installation prove faulty within one year, Sears will upon notice from you, cause such faults to be corrected at no cost to you."

¶4 Sears delivered the equipment to Plaintiff's home. Without notice, Defendants Mark Penton and John Doe,[1] doing business

---

1. Apparently, the brother of Mark Penton.

as Pro–Tech Heat and Air (Defendants), subsequently appeared at Plaintiff's residence and began to install the equipment.

¶ 5 The installation did not proceed smoothly. The equipment proved too large to fit through the attic door, requiring Defendants to remove the hand rails from the attic stairs, and carry the various parts piece-by-piece to the attic for installation. During the installation, the Defendants constantly argued and fought between themselves; placed the equipment as to block Plaintiff's access to the attic; and, took over thirty days to complete the installation. After the installation, Defendants failed to properly seal the floor of the residence upon removal of the existing floor furnaces, and failed to clean up, leaving the attic strewn with lunch refuse, soda cans, unused insulation and shards of metal, and the house full of saw and plaster dust.

¶ 6 Plaintiff contacted Sears by telephone, expressing her dissatisfaction with the installation and operation of the equipment.[2] In July 1996 and May 1997, Plaintiff wrote Sears, repeating her complaints and demanding removal or replacement of the equipment. Plaintiff apparently received no satisfaction.

¶ 7 In January 1998, Sears commenced a small claims action against Plaintiff to collect sums due under the Purchase Agreement upon Plaintiff's default in payments. Sears obtained personal service of process on Plaintiff in February, and, upon Plaintiff's failure to appear or answer, default judgment in March 1998.

¶ 8 In her affidavit, Plaintiff also averred that, in May 1998, she turned on the air conditioning for the first time since the previous season, and observed water emanating from cracks in the ceiling. Plaintiff identified the source as a disconnected drain pipe from the Sears equipment, and reconnected the pipe to the sewer vent where Defendants initially installed it.

¶ 9 Plaintiff contacted her home owners' insurance carrier, Prudential Insurance Company. In the course of their inspection of the water damage, an adjustor, accompanied by a construction contractor, discovered consequent mold in a "soaked" closet, and estimated the cost of repairs.

¶ 10 In July 1998, Plaintiff requested an annual "tune-up" service of her equipment from Dual Air A/C and Heating. Upon examination, a Dual Air representative reported the apparent ·failure of Defendants to request and obtain the required permit and inspection from the City of Oklahoma City at the time of installation, and serious safety issues concerning the installation.

¶ 11 Plaintiff then contacted Jerry King, the Chief Inspector for the City of Oklahoma City. King inspected Plaintiff's heating and air conditioning equipment, discovered over twenty violations of City Code (including the manner in which Defendants connected the drain line from the equipment to the sewer vent), and confirmed that Defendants neither sought nor obtained the required permit and inspections at the time of installation.

¶ 12 In September 1998, their treating physician attributed Plaintiffs' increased allergy symptoms to mold in the home, and recommended the home's decontamination. Plaintiffs moved out of the house, and Prudential provided Plaintiffs with housing and living expenses for September, October and November 1998. After an inspection of the house by a professional engineer, however, Prudential refused to pay for decontamination or further living expenses, citing its policy exclusion for loss due to "continuous or repeated seepage or leakage of water … over a period of time from within a plumbing, heating or air conditioning system."

¶ 13 In May 2000, Plaintiff commenced the instant action, citing Defendants' negligent installation in violation of manufacturers' instructions and City Code, and seeking damages for breach of contract. Upon failure to obtain timely service, the trial court dismissed the claims against Defendants.

---

**2.** Particularly, Plaintiff complained of the location of the thermostat in an unvented hallway, the operation of the thermostat, and unreasonably high operating costs, as well as consequential damage to her personal property from exposure to the dust and dirt of installation. Plaintiff also experienced home electrical problems, including flickering lights and tripped circuit breakers, upon operation of the equipment.

¶ 14 Plaintiff filed a motion for partial summary judgment, seeking an adjudication of Sears' liability for breach of contract. Sears responded and filed a motion for summary judgment, asserting, inter alia, that Plaintiff's breach of contract claim arose out of the Purchase Agreement transaction, that all claims arising out of the Purchase Agreement transaction should have been raised in the 1998 small claims action, and that, because Plaintiff did not then assert her breach of contract claim, the doctrine of *res judicata* consequently barred assertion of that claim in the present case.

¶ 15 Plaintiff objected, arguing that there were two separate and distinct contracts between the parties, one for financing of the purchase, and one for installation of the equipment. So, said she, because the 1998 small claims action adjudicated only the breach of the financing agreement, the claims for breach of the distinct and separate installation contract were not barred.

¶ 16 The trial court granted Sears' motion for summary judgment. On motion to reconsider, Plaintiff argued that her breach of contract claim had not accrued at the time of commencement or resolution of Sears' small claims action, that her breach of contract claim could not then be asserted, and, again, that *res judicata* consequently posed no bar.

¶ 17 The trial court denied the motion to reconsider. Plaintiff appeals, and the matter stands submitted on the trial court record.[3]

¶ 18 "Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559, 561. (Citation omitted.) "As this decision involves purely legal determinations, our standard of review of a trial court's grant of summary judgment is de novo[, and w]e review all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion." *Id.* "If the uncontroverted facts support legiti-

mate inferences favoring well-pleaded theory of the party against whom the judgment is sought or if the judgment is contrary to substantive law, the judgment will be reversed." *Id.*

¶ 19 "A 'motion to reconsider' is not recognized in Oklahoma procedural statutes." *Ward v. State ex rel. Dept. of Public Safety*, 2006 OK CIV APP 1, ¶ 10, 127 P.3d 643, 644; *McMillian v. Holcomb*, 1995 OK 117, ¶ 7, 907 P.2d 1034, 1036, fn. 3. A motion for reconsideration may be regarded as a motion for new trial under 12 O.S. § 651, *or a motion to vacate under* 12 O.S. § 1031.1. *McMillian*, 1995 OK 117, ¶ 7, 907 P.2d at 1036, fn. 3. Absent some pure error of law, the trial court's ruling on a motion to reconsider will not be disturbed unless affected by an abuse of discretion. *Ward*, 2006 OK CIV APP 1, ¶ 10, 127 P.3d at 644; *Michael Minnis & Associates, P.C. v. Kaw Nation*, 2004 OK CIV APP 36, ¶ 16, 90 P.3d 1009, 1013; *Nay v. First Financial Bank*, 2003 OK CIV APP 91, ¶ 14, 79 P.3d 1124, 1128.

¶ 20 A party must assert "as a counterclaim *any claim which at the time of serving the pleading the pleader has against any opposing party*, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." 12 O.S. § 2013(A). (Emphasis added.) Under this section, and "similar in effect to a claim-preclusion bar ... (earlier known as res judicata)," "[i]f a pleader fails to assert a compulsory counterclaim he cannot use it as the basis of an independent suit. (Citations omitted)." 12 O.S.A. § 2013 (West 2007), Committee Comment; *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, ¶ 7, 979 P.2d 252, 257.

¶ 21 More particularly, an "excess counterclaim" is a counterclaim that exceeds in amount the small claims jurisdictional limit set by 12 O.S. § 1759(A), and "a small-claim litigant who fails timely to bring an excess compulsory counterclaim (and transfer the case to the general docket) [is] barred from pressing that claim in a later action."

---

**3.** Rule 13(h), Rules for District Courts, 12 O.S. 2001, Ch. 2, App.; Ok.S.Ct.R. 1.36, 12 O.S.2001, Ch. 15, App.

*McDaneld,* 1999 OK 30, ¶¶ 6, 8, 979 P.2d at 257. "[A]n excess compulsory counterclaim not filed in a small-claim case (and where the case was not concurrently pressed for transfer to another docket) cannot be litigated in a later-brought suit." *McDaneld,* 1999 OK 30, ¶ 13, 979 P.2d 252, 257.

¶ 22 In the present case, the uncontroverted evidence establishes that Plaintiff admittedly observed problems with the installation of the equipment at the time in 1995. The uncontroverted evidence also establishes that Plaintiff expressed her complaints concerning the equipment's defective installation, poor performance, and consequential damage to Sears by telephone in 1995, and by letter in 1996 and 1997, the last time after a third-party inspection, and, that Sears did not respond and remedy her complaints.

¶ 23 There is but one contract in the present case, and that one was for Plaintiff's purchase and installation of Sears' heating and air conditioning equipment. The uncontroverted evidence shows that, in 1998, Sears sued Plaintiff in small claims court to recover sums due under the Purchase Agreement upon Plaintiff's default in payments. The uncontroverted evidence also establishes all elements of Plaintiff's accrued cause of action for breach of that contract at the time she was personally served with notice of Sears' small claims action, and Plaintiff averred damages in excess of the small claims jurisdictional limit. Plaintiff was consequently required to then appear, assert her accrued breach of contract claim, and request transfer to the district court docket, but she did not. She may not, therefore, assert that claim in the present case. *McDaneld,* 1999 OK 30, ¶¶ 8, 13, 979 P.2d at 256, 257.

¶ 24 The orders of the trial court granting Sears' motion for summary judgment and denying Plaintiff's motion for reconsideration are therefore AFFIRMED.

ADAMS, P.J., and HANSEN, J., concur.